Black,
dissenting: I dissent from the views expressed m the majority opinion wherein it is held:
The correct view, we think, under the circumstances of this case, is that the petitioner had property on March 1, 1913, of a fair market value now determined by us; that, through the execution of a contract in 1919 by which the property was sold and assigned, to the Tea/as Company [italics supplied], the petitioner would receive income over a period of years not greater than the life of the process patent; and that in the absence of better evidence as to a more equitable means of providing for the return of the capital involved, a subtraction should be made in each of the years here in question of $44,117.65 (one-seventeenth of $750,000).
I find no basis in tbe applicable revenue act for providing that petitioner, who parted with title to his patents at the time of their sale to the Texas Company, shall have his return of capital (in this case March 1,1913, value of his patent application) over a period of 17 years. Of course if petitioner had licensed the use of his patents to the Texas Company and the payments received during the taxable years were payments received under that license contract, then he would have been entitled to deduct from his gross income one-seventeenth of the cost of the patents, which in the instant case was the March 1, 1913, value of these patent applications. Service Recorder Co., 2 B. T. A. 96. But these payments which petitioner received from the Texas Company were not payments under a license —they were sums of money received in payment for the assignment of petitioner’s title to the patents. For example, it is stated in the opinion, “Prior to the issuance of the foregoing patents, namely, on February 27, 1919, petitioner entered into an agreement with the Texas Company under which he sold and assigned [italics supplied] his rights under the applications in question.”
“ Pursuant to the foregoing agreement and certain supplements ■thereto, the petitioner received lump sums or down payments in 1919 and 1920 of $95,000 and $35,000, respectively.”
Paragraph (4) of the agreement between Adams and the Texas Company reads:
4. Adams agrees to execute immediately upon tbe execution of tbis contract:
(a) Assignment transferring all bis right, title and interest in and to the invention set forth in the United States Patent No. 976,975 granted to him on November 29, 1910 for Oil Converting process.
(b) Assignment or assignments transferring all bis right, title and interest in the inventions set forth in applications for Letters Patent in the United States identified as follows: [Here follows description of various applications and Letters Patent.]
So it seems to me this transaction between Adams and the Texas Company must be treated as a sale of patents, rather than as a license of patents. The gain or loss from this sale must of course be determined under the provisions of the applicable revenue act and valid *118 regulations of the Commissioner made thereunder, as other gains or losses are determined. If the contract which petitioner received from the Texas Company when he sold and assigned his patents to it is susceptible of valuation in the year when the transaction occurred, then the sums of money received in cash in that year, plus the value of this contract, would represent the selling price and from this aggregate sum would be deducted the March 1, 1913, value of his patent applications and the difference would represent petitioner’s gain.
But if the contract which petitioner received in part payment for his assignment of the title to his patents to the Texas Company did not have a readily realizable market value in the year when received, then petitioner is entitled to recover his cost (which in this case is March 1,1913, value of his patent applications) before reporting any taxable gain. D. M. Stevenson, 9 B. T. A. 552. I know of nothing in the Revenue Act of 1918 which was in force at the time petitioner made his sale of patents to the Texas Company, nor in the Commissioner’s regulations interpretative thereof, which would require the petitioner to recover his capital costs in installments of one-seventeenth each year and render the balance as income.
Of course if he had not parted with title to the patents by virtue of sale to the Texas Company and the payments received were mere royalty payments under a patent license, then all the sums which petitioner received during the taxable years would be a part of his gross income and from this gross income he would be entitled to deduct as exhaustion in each of the taxable years one-seventeenth of the cost of his patents (in this case March 1, 1913, value). Service Recorder Co., supra. But, as I have already endeavored to point out, that is not the transaction which we have before us.
It will be readily conceded that the owner of patents having a’ March 1, 1913, value has the right to deduct from gross income one-seventeenth of such March 1,1913, value as exhaustion of the patents during such years as the patents have to run. Keystone Steel & Wire Co., 16 B. T. A. 617. But in the instant case, the Texas Company was the owner of the title to the patents in question, not the petitioner, and by reason of such ownership it was entitled to take ' deduction for exhaustion of the cost to it of these patents and doubtless did so in its corporation income-tax returns.